United States Courts
Southern District of Texas
FILED

JUN 18 2019

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | Criminal No. |
| v. | § | |
| | § | UNDER SEAL  19CR 453 |
| DOUGLAS SHARP, D.O., | § | |
| INNAD HUSAINI, M.D., and | § | |
| HANH HONG THI NGUYEN | § | |
| | § | |
| Defendants. | § | |

**INDICTMENT**

The Grand Jury charges:

**GENERAL ALLEGATIONS**

At all times material to this Indictment, unless otherwise specified:

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were 65 or older, or disabled. Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3. Medicare was divided into different parts. "Part A" of the Medicare program covered certain eligible home healthcare costs for medical services provided by a home healthcare agency ("HHA") to beneficiaries requiring home healthcare services because of an illness or disability causing them to be homebound. Payments for home healthcare services were typically made directly to a

HHA based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiaries.

4. Physicians, clinics, and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number." A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5. The Medicare program paid allowable charges for home healthcare services provided by participating HHAs only if the patient qualified for home healthcare benefits. A patient qualified for home healthcare benefits only if:

    a. the patient was confined to the home, also referred to as homebound;

    b. the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the plan of care; and

    c. the determining physician signed a certification statement specifying that:

        i. the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

        ii. the beneficiary was confined to the home;

        iii. a plan of care for furnishing services was established and periodically reviewed; and

iv. the services were furnished while the beneficiary was under the care of the physician who established the plan of care.

6. Medicare Part B paid for certain physician services, outpatient services, and other services, including diagnostic testing, that were medically necessary and were ordered by licensed physicians or other qualified health care providers.

7. The Medicare program pays for diagnostic testing only if ordered by the physician or other medical professional who is treating the beneficiary, that is, the physician or other medical professional who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem. Tests not ordered by the physician or other medical professional who is treating the beneficiary are not reasonable and necessary.

8. The Texas Medicaid program ("Medicaid") was a state-administered health insurance program funded by the United States government and by the State of Texas. The Medicaid program helped pay for reasonable and necessary medical procedures and services, such as physician services, provided to individuals who were deemed eligible under state low-income programs.

9. Medicaid could pay a portion of a claim originally submitted to Medicare in the event the patient had both Medicare and Medicaid coverage. This portion was generally a percentage of the amount Medicare allows for the billed charge. Such claims were automatically sent to Medicaid once processed by Medicare. Medicaid would pay its portion if Medicare originally allowed the claim.

**DEFENDANTS AND ENTITIES**

10. Verimed Health and Medical Wellness Clinic, Inc. ("Verimed") was a Texas corporation doing business in Harris County, in the Southern District of Texas. Verimed purportedly provided medical services to Medicare beneficiaries and Medicaid recipients from in or around

February 2015 through in or around April 2019.

11.     **DOUGLAS SHARP**, a resident of Harris County, Texas, was a Doctor of Osteopathy licensed to practice medicine in the State of Texas. **DOUGLAS SHARP** was the medical director of Verimed from in or around January 2016 to in or around April 2019.

12.     **INNAD HUSAINI**, a resident of Fort Bend County, Texas, was a Medical Doctor with a limited license to practice ophthalmology, his specialty, in the State of Texas. **INNAD HUSAINI** owned and operated Verimed from in or around February 2015 to in or around April 2019.

13.     Defendant **HANH HONG THI NGUYEN**, a resident of Harris County, Texas, operated Verimed from in or around February 2015 to in or around August 2017. **HANH HONG THI NGUYEN** was not a licensed medical professional.

14.     Co-conspirators of **DOUGLAS SHARP, INNAD HUSAINI,** and **HANH HONG THI NGUYEN** included, among others, HHA owners and operators who submitted and caused to be submitted claims to Medicare for home healthcare services that were not medically necessary, not provided, or both. Co-conspirators at HHAs submitted and caused to be submitted claims that listed **DOUGLAS SHARP** as the certifying or re-certifying physician for home healthcare services.

## COUNT 1

### Conspiracy to Commit Healthcare Fraud
### (Violation of 18 U.S.C. § 1349)

15.     Paragraphs 1 through 14 are re-alleged and incorporated by reference as if fully set forth herein.

16.     From in or around February 2015 through in or around April 2019, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, Defendants

**DOUGLAS SHARP,
INNAD HUSAINI, and
HANH HONG THI NGUYEN**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare and Medicaid, healthcare benefit programs, in connection with the delivery of and payment for healthcare benefits, items, and services.

### Purpose of the Conspiracy

17.     It was a purpose of the conspiracy for Defendants **DOUGLAS SHARP, INNAD HUSAINI,** and **HANH HONG THI NGUYEN**, and others known and unknown to the Grand Jury, to unlawfully enrich themselves by (a) submitting and causing the submission of false and fraudulent Part A claims to Medicare and Medicaid for home healthcare services, (b) submitting and causing the submission of false and fraudulent Part B claims to Medicare and Medicaid, and (c) diverting and causing the diversion of the proceeds of the fraud for the personal use and benefit of Defendants and their co-conspirators.

### Manner and Means of the Conspiracy

The manner and means by which Defendants sought to accomplish the purpose of the conspiracy included, among other things:

18. Co-conspirators at HHAs, many of whom were Medicare providers, referred Medicare beneficiaries and Medicaid recipients to Verimed.

19. **DOUGLAS SHARP, INNAD HUSAINI, HANH HONG THI NGUYEN,** and other co-conspirators, known and unknown to the Grand Jury, conspired to make it appear on paper as if Medicare beneficiaries and Medicaid recipients qualified for home healthcare services, when many did not.

20. On or about March 4, 2016, the Texas Medical Board restricted the medical license of **INNAD HUSAINI**. The Texas Medical Board ordered that **INNAD HUSAINI** limit his practice of medicine solely to the practice of Ophthalmology and Neuro-Ophthalmology.

21. Beginning on or about the time of this restriction, **INNAD HUSAINI** and **HANH HONG THI NGUYEN** paid or caused **DOUGLAS SHARP** to be paid to sign false and fraudulent plans of care and other medical documents.

22. **DOUGLAS SHARP** fraudulently certified and re-certified patients for home healthcare services by signing plans of care and medical documents that stated that the patients qualified for home healthcare services when many of the patients did not. **DOUGLAS SHARP** specifically falsely certified and re-certified that patients were confined to the home, were under **DOUGLAS SHARP**'s care, and had a medical need for home healthcare services.

23. From in or around February 2015 through in or around April 2019, **DOUGLAS SHARP** did not conduct face-to-face medical visits with patients referred to Verimed.

24. From in or around February 2015 through in or around May 2017, **HANH HONG THI NGUYEN**, who was not a licensed medical professional, posed as a medical professional and conducted face-to-face medical visits with patients referred to Verimed. Claims for these services were billed to Medicare and Medicaid as if **DOUGLAS SHARP** was the attending physician.

25. In exchange for **DOUGLAS SHARP** certifying and recertifying HHA-referred patients for home healthcare services, **DOUGLAS SHARP, INNAD HUSAINI, HANH HONG THI NGUYEN**, and other co-conspirators, known and unknown to the Grand Jury, required HHA-referred patients to undergo diagnostic tests and other medical services that often were not medically necessary.

26. **DOUGLAS SHARP, INNAD HUSAINI, HANH HONG THI NGUYEN**, and other co-conspirators billed or caused Medicare and Medicaid to be billed for diagnostic tests and other medical services purportedly performed on HHA-referred patients that were medically unnecessary, not performed, or both.

27. From in or around February 2015 through in or around May 2017, **HANH HONG THI NGUYEN**, who was not a licensed medical professional, caused to be ordered or performed diagnostic tests and other medical services. Claims for these tests and services were billed to Medicare and Medicaid as if **DOUGLAS SHARP** ordered or performed them.

28. From in or around February 2015 through in or around April 2019, **INNAD HUSAINI** caused Medicare and Medicaid to be billed for eye procedures that he purportedly performed on HHA-referred patients that were medically unnecessary, not performed, or both.

29. **DOUGLAS SHARP** and **INNAD HUSAINI** each maintained a Medicare provider number, which was used to submit false and fraudulent claims to Medicare and Medicaid for diagnostic tests, eye procedures, and other medical services purportedly performed on HHA-referred patients that were not medically necessary, not provided, or both.

30. From in or around January 2016 through in or around April 2019, co-conspirators at HHAs, known and unknown to the Grand Jury, submitted or caused the submission of claims to Medicare for approximately $8.6 million for home healthcare services for which **DOUGLAS SHARP** was listed as the attending physician that were not medically necessary, not provided, or both. Medicare paid co-conspirators at these HHAs approximately $9.3 million on those claims.

31. From in or around July 2015 to in or around April 2019, **DOUGLAS SHARP, INNAD HUSAINI, HANH HONG THI NGUYEN**, and their co-conspirators, known and unknown to the Grand Jury, submitted or caused the submission of approximately $7.4 million in claims to Medicare for diagnostic tests, eye procedures, and other medical services purportedly performed at Verimed, many of which were medically unnecessary, not provided, or both. Medicare paid approximately $2.9 million on those claims.

32. From in or around October 2015 to in or around March 2019, **DOUGLAS SHARP, INNAD HUSAINI, HANH HONG THI NGUYEN**, and their co-conspirators, known and unknown to the Grand Jury, submitted or caused the submission of claims to Medicaid for diagnostic tests, eye procedures, and other medical services. Medicaid paid approximately $67,000 on these claims.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-6

### Healthcare Fraud
### (Violation of 18 U.S.C. §§ 1347 and 2)

33. Paragraphs 1 through 32 are re-alleged and incorporated by reference as if fully set forth herein.

34. On or about the dates specified below, in the Houston Division of the Southern District of Texas and elsewhere, the Defendant identified below, aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully execute and attempt to

8

execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare and Medicaid, healthcare benefit programs, in connection with the delivery of and payment for healthcare benefits, items, and services, as set forth below:

| Count | Defendant | Medicare Beneficiary | Procedure Description | Approx. Date of Service | Approx. Medicare Payment to Verimed |
|---|---|---|---|---|---|
| 2 | **INNAD HUSAINI** | B.J. | Injection of medication into eye | 1/25/2017 | $86.24 |
| 3 | **INNAD HUSAINI** | M.A. | Injection of medication into eye | 12/6/2016 | $129.84 |
| 4 | **INNAD HUSAINI** | C.A. | Injection of medication into eye | 7/6/2018 | $64.15 |
| 5 | **HANH HONG THI NGUYEN** | B.J. | Prolonged office or other outpatient service first hour | 3/29/2017 | $78.40 |
| 6 | **HANH HONG THI NGUYEN** | M.A. | Prolonged office or other outpatient service first hour | 4/19/2017 | $78.40 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 7-9

**False Statements Relating to Health Care Matters**
**(Violation of 18 U.S.C. § 1035)**

35.     Paragraphs 1 through 32 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

9

36. On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere, Defendant,

## DOUGLAS SHARP

aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, as set forth below, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, and in a matter involving a health care benefit program, specifically Medicare:

| Count | Defendant(s) | Medicare Beneficiary | Approx. Date of Certification | Approx. Certification Period | HHA | Approx. Medicare Payment to HHA |
|---|---|---|---|---|---|---|
| 7 | **DOUGLAS SHARP** | B.J. | 4/8/2017 | 4/2/2017 – 5/31/2017 | Dynamic Care Health Services | $3,232.14 |
| 8 | **DOUGLAS SHARP** | M.A. | 5/11/2017 | 4/20/2017 – 6/18/2017 | Bathfol Health Services Inc. | $2,209.50 |
| 9 | **DOUGLAS SHARP** | C.A. | 7/12/2018 | 7/6/2018 – 9/3/2018 | Witestone Inc. d/b/a Alpha Links Healthcare Services | $2,180.92 |

All in violation of Title 18, United States Code, Section 1035.

## CRIMINAL FORFEITURE
## (18.S.C. § 982(a)(7))

37. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to Defendants **DOUGLAS SHARP, INNAD HUSAINI,** and **HANH HONG THI NGUYEN** that upon conviction of health care fraud offenses, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense is subject to forfeiture.

38. The property subject to forfeiture includes but is not limited to, the following property:

   (a) real property on Thornlea Drive in Houston, Texas, together with all improvements, buildings, structures, and appurtenances, and legally described as follows:

   Lot Four (4), in Block Twenty (20), of REPLAT OF BEVERLY HILLS SECTIONS SIX (6) AND SEVEN (7), a subdivision in Harris County, Texas, according to the map or plat thereof recorded in/under Volume 61, Page 19 of the Map Records of Harris County, Texas.

   (b) real property on Sierra Grace Lane in Houston, Texas, together with all improvements, buildings, structures, and appurtenances, and legally described as follows:

   Lot 3, Block 1, of Ashley Pointe, Sec. 11, Harris County, Texas.

   (c) real property of approximately 93.583 acres known as 7745 Highway 36 South in Wallis, Texas, together with all improvements, buildings, structures, and appurtenances, and legally described as follows:

   ABST A003 M N Allen Tract C & A224 H & TCRR, Acres: 93.5830.

39. The United States will seek the imposition of a money judgment against each defendant. In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the defendants in substitution.

A TRUE BILL

JOSEPH S. BEEMSTERBOER
Deputy Chief
Fraud Section, Criminal Division
U.S. Department Of Justice

*/s/ Catherine Wagner*

CATHERINE WAGNER
Trial Attorney
Fraud Section
Criminal Division
U.S. Department Of Justice

RYAN K. PATRICK
United States Attorney

*/s/ Kathryn Olson*

KATHRYN OLSON
Special Assistant United States Attorney
U.S. Attorney's Office for
the Southern District of Texas